450 So.2d 224 (1984)
Kenneth R. CATE, et al., Appellants/Petitioners,
v.
Gordon G. OLDHAM, Jr., et al., Appellees/Respondents.
No. 63775.
Supreme Court of Florida.
May 3, 1984.
Dennis J. Wall of Rumberger, Kirk, Caldwell, Cabaniss & Burke, Orlando, for appellants/petitioners.
David R. Best, and John M. Robertson of Robertson, Williams, Duane, Lewis & Ranson, Orlando, for appellees/respondents.
ADKINS, Justice.
This cause is before us on discretionary review of two questions certified to this Court by the Eleventh Circuit Court of Appeals. We have jurisdiction. Art. V, § 3(b)(6), Fla. Const. The questions certified by the federal appellate court are:
1) Under the common law of Florida, may a state official who has been sued in his official capacity for alleged negligence in the exercise of his official duties, maintain an action for malicious prosecution against plaintiffs in the negligence action?
2) If the answer is "yes", what is the standard of malice that the state official/plaintiff must prove in order to prevail on the merits of the malicious prosecution action? How does this standard compare with the level of malice that must be proved in malicious prosecution actions where private parties are the plaintiffs?
Cate v. Oldham, 707 F.2d 1176, 1185 (11th Cir.1983).
The facts leading up to this suit are somewhat complex. Petitioner Kenneth Cate was retained by the estate of Mary Bradham to investigate the possibilities for suit on behalf of the estate against the state and respondent Gordon Oldham. *225 Mary Bradham had died as a result of a battery committed by her estranged husband, Ernest Bradham. Cate did file a wrongful death action in the circuit court alleging that Oldham, as state attorney, had breached his duty to prosecute Ernest Bradham because he knew of Bradham's dangerous propensities but had, nevertheless, failed to adequately prosecute and investigate Bradham. The wrongful death action resulted in a summary judgment for the state and Oldham. The result was affirmed, per curiam without opinion, by the Fifth District Court of Appeal. Russell v. State, 392 So.2d 91 (Fla. 5th DCA 1980). Attorney's fees were then sought by the state under section 57.105, Florida Statutes (1979). The trial court awarded attorney's fees but the district court reversed the award.
Thereafter, Oldham individually filed suit against Cate, Cate's law firm, and Bradham's estate alleging that the wrongful death action brought by those parties was a malicious prosecution action and seeking both compensatory and punitive damages. Subsequently, a suit for malicious prosecution was also filed by the state and Oldham in his capacity as state attorney, denominated as "State ex rel. Gordon G. Oldham, Jr., Plaintiff."
Petitioners' motions to dismiss the individual action brought by Oldham were denied by the trial court. Petitioners then filed a petition for injunctive and declaratory relief, pursuant to 42 U.S.C. § 1983, in federal district court asserting that the malicious prosecution action filed against them was a violation of their first amendment rights. On the same date petitioners also filed a petition for writ of certiorari in Florida's Fifth District Court of Appeal from the denial of their motion to dismiss. The district court of appeal denied interlocutory relief citing Hawaiian Inn of Daytona Beach, Inc. v. Snead Construction Corp., 393 So.2d 1201 (Fla. 5th DCA 1981). In the same order the district court of appeal denied petitioners' motion to certify the issue to this Court.
In conjunction with the petition for injunctive and declaratory relief in the federal court the petitioners requested a temporary restraining order and applied for a preliminary injunction. The court denied both requests. The federal district court also dismissed with prejudice the petition for injunction to prevent the suit by the state and Oldham in his official capacity on the basis that the state was not a "person" within the meaning of 42 U.S.C. § 1983. Petitioners then took an appeal to the United States Eleventh Circuit Court of Appeal.
On June 2, 1983, the Eleventh Circuit Court of Appeals affirmed the dismissal of the petitioner's section 1983 action under the broad immunity provided the states by the eleventh amendment to the United States Constitution rejecting the application of either the Younger or Pullman abstention doctrines to this case. The court also certified the questions being presented to this Court.
We answer the first question certified in the negative.
Section 2.01 of the Florida Statutes (1981) declares that the common and statute laws of England which are of a general nature, down to July 4, 1776, are in force in this state. The only exception provided is if the statute or common law is inconsistent with the United States Constitution or laws of the United States or Florida. Since there is an absence of any statutory law on the point addressed in this question, it is therefore proper that we examine the common law cause of action for malicious prosecution.
The common law required a showing of special damage before the action for malicious prosecution could lie. The policy behind this determination was an Englishman's right to petition his fellow citizens for redress of grievances against individuals generally. Parker v. Langley, 93 Eng. Rep. 293, 294-97 (K.B. 1714). In Parker v. Langley the court stated:
The applying in a civil action to a Court of Justice for satisfaction or redress has been so much favoured, that no action has ever been allowed against a *226 plaintiff for such suit singly and directly, on pretence of its being false and malicious.
Id. at 294.
The fact that pre-revolutionary judges based their disfavor of malicious prosecution on the right to petition generally is of dispositive significance in this proceeding. The right to petition government specifically, for redress of grievances against government, was separately and expressly protected by Parliament. By statute, except for the crimes of riot and unlawful assembly, no other criminal sanction and no form of action could ever be imposed or brought because of a previous petition to the government for redress of a grievance against any part of government. See 1 W. Blackstone, Commentaries 138-39. The right to petition was so important a part of the constitutional scheme that the royal charters of each of the American colonies guaranteed this right. R. Bailey, Popular Influence Upon Public Policy: Petitioning in Eighteenth-Century Virginia 13 (1979). So strongly protected was the exercise of this right that judges in colonial times were reprimanded and fined for inquiring into the contents of petitions against government and for rejecting those they deemed to be false. Id. at 39-41.
At the time the American Bill of Rights was adopted the English constitution permitted only two governmental restrictions on the right to petition. The first restriction was a "time, place and manner" limitation by Parliament on the number of persons permitted to subscribe to a given petition. The only other permissible governmental restriction was by prosecution for the offenses of riot or tumult when great numbers of persons rioted after presenting a petition to the king or Parliament.
The presentation of a complaint to government concerning its conduct is now expressly held central to the right to petition that government for the redress of grievances against it. See, e.g., California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); Mid-Texas Communications Systems, Inc. v. American Telephone & Telegraph Co., 615 F.2d 1372, 1382 (5th Cir.), cert. denied, 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980). No Anglo-Commonwealth case has been cited by either party in this case in which government has been permitted, or even attempted, to sue its subjects for malicious prosecution. We find only two United States cases which have directly addressed this issue.
In City of Long Beach v. Bozek, 31 Cal.3d 527, 645 P.2d 137, 183 Cal. Rptr. 86 (1982), vacated, 459 U.S. 1095, 103 S.Ct. 712, 74 L.Ed.2d 943 (1983), on remand, 33 Cal.3d 727, 661 P.2d 1072, 190 Cal. Rptr. 918 (1983) (prior opinion reiterated in its entirety), the Supreme Court of California held that governmental entities may not maintain actions for malicious prosecution against those who have previously sued such entities without success. First, the court concluded in Bozek that the plaintiff's suit against the City of Long Beach and two city police officers for false imprisonment, false arrest, negligent hiring, assault and battery was a protected exercise of the right of petition. The court also found that the bringing of suits against the government is absolutely privileged. The court rejected the city's "most persuasive argument" that malicious prosecution actions must be allowed in order to compensate municipalities for expenses incurred in defending against baseless suits and to deter the proliferation of such suits and concluded that new statutes allowing award of attorney's fees as costs was a preferable remedy.
The only other case which faced this issue was Board of Education v. Marting, 7 Ohio Misc. 64, 217 N.E.2d 712 (Ct.C.P. Madison County 1966). In Marting a three-judge panel of the Court of Common Pleas held that a board of education lacked the legal capacity, power, and authority to sue citizens for malicious prosecution. The judges' unanimous holding was based in part on constitutional considerations and in part on historical analysis. The court stated:

*227 Permitting a Board to sue a taxpayer, who is denied judicial relief in a prior case, for malicious prosecution, in an unlimited amount can only result in self-censorhip. Potential critics of official conduct would be foreclosed from bringing suit because of doubt that they would be permitted to, or could prove the facts, or for fear of the expense for having failed to do so. Any judicial construction or statutory provision prohibiting or unduly restricting this right would contravene the First and Fourteenth Amendments to the Federal Constitution... .
Malicious prosecution as an action at common law was to protect the individual from unjustifiable litigation in the protection of the interests of (1) damage to reputation, (2) putting in jeopardy life, limb or liberty, and (3) damage to property, as for example expenditure of money to defend oneself of criminal charges.
217 N.E.2d at 717 (citations omitted).
There simply is no historical basis for a state officer to retaliate with a malicious prosecution action when he has been sued in his official capacity. Malicious prosecution is considered a personal tort. Tatum Brothers Real Estate & Investment Co. v. Watson, 92 Fla. 278, 109 So. 623 (1926). The gravamen of the action is injury to character. Tidwell v. Witherspoon, 21 Fla. 359, 360-61 (1885).
At common law successful defendants could either tax costs and fees in the original action, or they could sue for malicious prosecution upon the basis of those losses; they could not do both. Parker v. Langley, 93 Eng.Rep. at 297. There being no Florida decision or statute to the contrary, the common law rule precludes such an attempt at double recovery here. A government official sued only in his or her official capacity, and from whom no relief is sought which would run against his or her personal, as opposed to governmental behavior or finances, can claim no greater right to seek greater sanctions. He or she has personally suffered no loss which is not redressable through his or her application for redress in the suit in which he or she is originally sued. It is reasonable to compel such officials to seek such redress in the suit in which they are named defendants in their official capacity.
We have concluded that the common law of Florida does not allow a state official who has been sued in his official capacity to maintain an action for malicious prosecution. Since we have responded in the negative it is unnecessary for us to answer the second question certified to us.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.