United States Court of Appeals,

Eleventh Circuit.

No. 96-3075.

Gonzalo AGUILAR, M.D., Doroteo C. Adije, M.D.;  Doroteo M. Barnes, M.D.;  Juan Bauer, M.D.;  Leonardo Del Rosario, M.D.;  et al., Plaintiffs-Appellants,

v.

SOUTHEAST BANK, N.A., a national banking association f.k.a. First Federal Savings and Loan Association of Jacksonville, Defendant-Appellee,

Federal Depositors Insurance Company, as Receiver for Southeast Bank, N.A., ets., Receiver-Appellee.

July 29, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 91-747-Civ-J-99(S)), William Terrell Hodges, Judge.

Before ANDERSON and BIRCH, Circuit Judges, and WOODS[*], Senior District Judge.

PER CURIAM:

Resolution of this case requires an interpretation of Florida law regarding compulsory counterclaims.  The specific issue is whether the compulsory counterclaim rule applies when the putative counter-claimant in an *in rem* foreclosure action is not a party to the mortgage agreement which is the subject of the foreclosure.  The outcome of this case has the potential to affect a large percentage of foreclosure actions in Florida.  Because the ramifications of the decision in this case could have far-reaching effects on property law in Florida, we believe it should be resolved by Florida's highest court.  We therefore certify the question to the Supreme Court of Florida.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO ARTICLE 5, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION.

TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:

I. STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

The appellants, who are all doctors ("appellants" or "doctors"), had an agreement to purchase

_____

[*]Honorable Henry Woods, Senior U.S. District Judge for the Eastern District of Arkansas, sitting by designation.

condominiums in a medical office complex called "St. Jude Medical Center," which was being developed by a partnership known as the GIPP Partnership. The project was financed by First Federal Savings and Loan Association of Jacksonville.[1]

In 1987, the Bank initiated foreclosure proceedings against the St. Jude project. The GIPP Partnership, as the developer of the project, was named as a defendant. The appellants, and others, were also named as defendants in the foreclosure action based solely on the fact that they had an interest in St. Jude, in that their purchase agreements would have given them a part ownership interest in the first floor ambulatory surgical center, physical therapy center, radiology center and other attendant services. The ownership by each of the appellants in the first floor facility was to be represented by shares of stock of a corporation or units of a limited partnership which would own and operate the first floor facility. The doctors were not obligors on the note or mortgage of St. Jude. The Bank did not seek a deficiency judgment against any of the appellants, nor could they have. In sum, the doctors had no direct relationship with the Bank. Their only interest in the foreclosure lawsuit was that their ownership of condominiums under construction would have entitled them to part ownership in the first floor of St. Jude.

The GIPP Partnership filed a counterclaim against the Bank in the foreclosure, claiming that the Bank had breached an agreement to modify the construction loan agreement to extend the construction loan. In its counterclaim, GIPP contended that it had been unable to complete the sale of the condominium offices or to begin operation of the ambulatory surgical center because of the Bank's breach of the loan extension agreement.

The Bank and GIPP eventually reached a settlement which provided for the entry of an agreed foreclosure judgment against St. Jude. After the foreclosure, the doctors filed suit against the Bank in state court, alleging tortious interference with a contractual relationship, based on the damages they suffered when the Bank allegedly breached the loan extension agreement between the Bank and GIPP. The alleged loan extension agreement had been the subject of GIPP's counterclaim

---

[1]Southeast Bank, N.A. acquired First Federal after the foreclosure action was filed. Southeast became the successor in interest of First Federal. Southeast Bank and First Federal are interchangeably referred to as "the Bank."

against the Bank in the foreclosure action.

The state court, relying on *Turkey Creek, Inc. v. Londono,* 567 So.2d 943 (Fla. 1st DCA 1990), granted the Bank's Motion for Summary Judgment on the ground that the claim for tortious interference should have been raised as a compulsory counterclaim in the foreclosure action. The court based its decision on the fact the doctors were parties to the foreclosure action. The court had personal jurisdiction over the doctors. In other words, even though the foreclosure was an *in rem* action, the doctors were named as defendants *in personam.*

While the appeal of the summary judgment was pending, the Bank was declared insolvent and the Federal Deposit Insurance Corporation ("FDIC") became the receiver. The FDIC immediately removed the case to federal court. The doctors moved the federal district court to modify or vacate the judgment and requested a *de novo* review of the summary judgment entered by the state court.

The district judge agreed with the state court's conclusion that the tortious interference claims were logically related to the issues raised in the foreclosure action and that the doctors should have raised the tort claims in the foreclosure action. The federal district court had the benefit of the Florida Supreme Court's affirmance of the *Londono* case, on which the state court had relied. *Londono v. Turkey Creek, Inc.,* 609 So.2d 14 (Fla.1992). In *Londono,* the Supreme Court of Florida notes that the purpose of the compulsory counterclaim rule is to promote judicial efficiency and to avoid multiple lawsuits from the same facts.

## II. REASONS FOR CERTIFICATION

The Supreme Court of Florida has adopted the "logical relationship test" to determine whether a counterclaim is compulsory under Rule 1.170, Fla.R.Civ.P. In the case at bar, there is little doubt that the doctors' claims for tortious interference is logically related to the operative facts of the foreclosure. The purported loan extension agreement, the very document on which the doctors based their claim for tortious interference, was the subject of the counterclaim of GIPP in the foreclosure suit. The validity of that document was actually at issue in the foreclosure action.

On the other hand, requiring torts claims of parties to the foreclosure who were not obligated

in any way on the note or mortgage at issue in the foreclosure—even though they arise from the same operative facts—could transform ordinary routine foreclosures into protracted lawsuits, requiring juries for some claims of some parties and not for others. The Florida Supreme Court may decide that such a rule, while avoiding multiple lawsuits, would impede judicial efficiency, perhaps raising opportunities for parties to prolong and delay foreclosure proceedings.

In sum, it is unclear whether there are exceptions to the compulsory counterclaim rule reaffirmed in broad terms in *Londono.*

### III. QUESTION TO BE CERTIFIED TO THE FLORIDA SUPREME COURT

The following question is certified to the Florida Supreme Court:

WHETHER A DEFENDANT WHO IS NOT AN OBLIGOR ON THE ORIGINAL NOTE AND MORTGAGE IN AN *IN REM* FORECLOSURE ACTION IS REQUIRED TO BRING, AS A COMPULSORY COUNTERCLAIM, TORT CLAIMS ARISING OUT OF THE SAME OPERATIVE FACTS AS THOSE OF THE FORECLOSURE ACTION.

In order to assist the Supreme Court of Florida in its consideration of the issues raised by this case, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Florida.