909 So.2d 910 (2005)
Merrill KROLICK, D.O., and Suncoast Internal Medicine Consultants, P.A., Appellants,
v.
Joan MONROE, by Sheri MONROE, Personal Representative of the Estate of Joan Monroe, deceased; on behalf of the Estate of Joan Monroe, and on behalf of James Monroe, surviving spouse, Appellee.
No. 2D03-1969.
District Court of Appeal of Florida, Second District.
May 25, 2005.
Rehearing Denied September 13, 2005.
*912 Scot E. Samis and Robert J. Lancaster of Abbey, Adams, Byelick, Kiernan, Mueller & Lancaster, P.A., St. Petersburg, for Appellants.
Robert D. Brown of Freidin & Brown, P.A., Miami, for Appellee.
DAVIS, Judge.
Merrill Krolick, D.O., and Suncoast Internal Medicine Consultants, P.A. (collectively "Appellants"), appeal the trial court's nonfinal order that granted the Estate of Joan Monroe ("the Estate") a new trial in its negligence suit against Appellants. We conclude that the trial court abused its discretion in granting the motion, and we reverse.
After fainting at a friend's home, Joan Monroe was transported to the hospital complaining of severe, sharp chest pain. She was admitted to the hospital by her family physician, who called in Dr. Krolick, a cardiologist, for a consultation. After performing certain tests, Dr. Krolick concluded that because the chest pain was reproducible on palpation, Monroe's pain was muscular in nature and caused by inflammation in the cartilage of the chest. Dr. Krolick, therefore, recommended to Monroe's doctor that she be discharged. Two days after her admission, Monroe was discharged and returned home. Four days later, she died from what was determined to be a rupture in the proximal aorta that led to fatal bleeding into the pericardial sac.
The Estate subsequently filed this negligence action.[1] At trial, the Estate presented testimony that Dr. Krolick should have recognized Monroe's symptoms as indicating heart involvement and should have performed other tests. The Estate maintained that but for Dr. Krolick's negligence in missing these signs and failing to order other tests, he would have discovered that Monroe was suffering from a ruptured aorta upon her admission to the hospital and that once the problem had been located, surgery would have successfully prevented Monroe's death.
Dr. Krolick's defense was premised on the theory that Monroe did not have a ruptured aorta at the time of her hospitalization and that the fatal rupture occurred after her discharge. Thus, Dr. Krolick argued, his treatment was proper and in accord with the standard of care required of him under the circumstances.
At the conclusion of trial, during the charge conference, the Estate requested that the trial court give both the concurring cause instruction[2] and the intervening *913 cause instruction[3] in addition to the standard negligence instruction.[4] The trial judge initially agreed to give all three instructions; however, he ultimately changed his mind and decided to give only the standard negligence instruction. After the jury returned a defense verdict, finding that no negligence on the part of Dr. Krolick was the legal cause of the damage suffered by Monroe, the Estate moved for new trial, arguing that the trial court erred in failing to instruct the jury on intervening and concurring causes. The trial court agreed that it should have given the concurring cause instruction and granted the new trial. It is this order granting new trial that Dr. Krolick now appeals.[5]

Standard of Review
Appellate review of the trial court's order granting the motion for a new trial has been based on an abuse of discretion standard. Allstate Ins. Co. v. Manasse, 707 So.2d 1110 (Fla.1998). "The appellate court should apply the reasonableness test to determine whether the trial judge abused his discretion, to wit, `discretion is abused only where no reasonable [person] would take the view adopted by the trial court.'" Id. at 1111 (quoting Huff v. State, 569 So.2d 1247, 1249 (Fla. 1990)); see also Waters Realty Co. v. Miami Tripure Water Co., 100 Fla. 221, 129 So. 763 (1930). Historically, however, it has taken a greater showing to reverse an order granting a new trial than one denying a new trial. Manasse, 707 So.2d 1110.
Initially, we make two observations regarding this standard of review. First, it is unclear what a "greater showing" means. Second, other case law seems to temper the abuse of discretion standard as applied to rulings on motions for new trial. Historically, when such a motion is based on an evidentiary issue, i.e., the verdict is contrary to the manifest weight of the evidence, the abuse of discretion standard is broadly applied as the trial court is clearly in the best position to review the evidence received at trial. Collins Fruit Co. v. Giglio, 184 So.2d 447 (Fla. 2d DCA 1966). However, when the motion is premised on an alleged error of law, the application of the standard is much more limited. Id. "The distinction is logical in view of the rationale that an appellate court, relying on a written record only, is poorly equipped to weigh evidence; but where the reason for granting a new trial involves a question of law, a reviewing court is [on] more equal footing with the trial judge." Id. at 449; see also Tri-Pak Mach., Inc. v. Hartshorn, 644 So.2d 118, 119 (Fla. 2d DCA 1994) (stating that the trial court's discretion to grant a new trial is "significantly reduced when the motion concerns a purely legal question" because such an issue "can be as accurately reviewed from an appellate record as from the trial judge's bench") (citations and footnote omitted).[6] Although the applicable standard is abuse of discretion, the sole issue raised in the motion before us was a *914 matter of law. Therefore, applying the Collins Fruit Co. line of cases in light of Manasse, the abuse of discretion standard is to be applied here in a restricted manner.

Analysis
A trial judge is authorized to grant a new trial when he or she becomes aware of a specific or substantial prejudicial error or when he or she finds that the jury verdict is "contrary to the manifest weight of the evidence." Ford v. Robinson, 403 So.2d 1379, 1382 (Fla. 4th DCA 1981) (citing Collins Fruit Co., 184 So.2d 447). As such, a trial judge, in essence, acts as an appellate judge, immediately correcting a known error. However, in so doing, he or she must apply the same law that the appellate court would apply in reversing a verdict due to improper jury instructions.
The trial judge who must decide whether to grant a new trial on the proffered ground that some reversible error of law occurred at some point during the trial need only ask himself if there was error and if so whether the error was substantially prejudicial. In that instance, the judge is required to sit in essence as an appellate judge. If he concludes that reversible error has been committed, the judge is obliged to grant a new trial on the same basis that an appellate court would do so. The power of appellate review over the trial judge's resolution of such alleged errors is quite broad, the appellate court being on an "equal footing" with the trial court.
Id. (citations omitted).
On appeal, a party claiming reversible error for failure to give a requested jury instruction must show three factors: (1) that the requested instruction is an accurate statement of the law; (2) that the evidence presented supports giving the instruction; and (3) that the instruction is necessary to allow the jury to properly resolve all the issues in the case. Hart v. Stern, 824 So.2d 927 (Fla. 5th DCA 2002). Accordingly, these three factors must be shown by the movant before a trial court grants a motion for new trial.
Here, the Estate argues that the concurring cause instruction meets all three requirements. To support its argument, the Estate cites several cases involving medical negligence claims that appear to be similar to the facts in the case before us. The trial court's order applied two of these decisions.
First, the Estate argued, and the trial court's order cited, Zigman v. Cline, 664 So.2d 968 (Fla. 4th DCA 1995). In that case, Zigman was involved in a serious automobile accident that tore his aorta at a point near his heart. Despite the serious injuries that resulted from the accident, Zigman survived and was taken to the hospital, where Cline performed surgery to repair his aorta. The surgery was successful, but Zigman was left paralyzed. He sued Cline for negligence in performing the surgery, arguing that the doctor used the wrong technique in the repair procedure. The evidence conflicted as to the cause of the paralysis. Zigman's contention was that the procedure chosen by Cline resulted in a limitation of the blood supply to the spinal cord that resulted in the paralysis. Had the doctor used a different method, the supply would not have been impaired and the paralysis would not have resulted. Cline's testimony was that Zigman was going to be paralyzed from the injuries sustained in the accident and that but for his surgery, Zigman would have died. The trial court denied the requested concurring cause instruction, and the Fourth District reversed, concluding that "[u]nder any view of the case, it cannot be denied that the jury heard evidence *915 of more than one cause of the plaintiff's injuries." Id. at 970.
The Estate also pointed to Auster v. Gertrude & Philip Strax Breast Cancer Detection Institute, Inc. 649 So.2d 883 (Fla. 4th DCA 1995). In that case, Auster alleged that the doctor failed to detect her breast cancer when reading her mammograms. Shortly thereafter, Auster's gynecologist found a malignant lump in her breast that required radical surgery. The Fourth District concluded that when a person's preexisting medical condition advances without the intervention that would have occurred if the doctor had not been negligent, the resulting injury is caused both by the natural progression of the disease and the failure of the physician to impede its natural course. Thus, in those situations the concurring cause instruction should be given. "Instruction 5.1(b) is required `where the defendant's negligence acts in combination with the plaintiff's physical conditions to produce the resulting injury,' and the defendant's negligence is one cause, but not necessarily the only cause, leading to the plaintiff's injury." Id. at 887 (quoting Marinelli v. Grace, 608 So.2d 833, 834 (Fla. 4th DCA 1992)).
The facts of both Zigman and Auster, however, are significantly different from the facts of this case. Here, the Estate did not argue that Dr. Krolick's negligence was one of two or more causes of Monroe's death. Rather, the entire case was premised on the argument that but for Dr. Krolick's negligence, Monroe would not have died.
In its complaint, the Estate alleged that "Defendant Krolick was negligent in the care and treatment of Joan Monroe, and such negligence caused Joan Monroe to suffer injury and/or death on January 11, 2000." In his opening statement, counsel for the Estate concluded as follows:
[A]t the end of the case when we stand before you, you will have the evidence more likely than not that Dr. Krolick fell below the standard of care, that had he recognized and tested and evaluated and thought about this and if he have [sic] sent her for a test, one of three that would have diagnosed her, that he would have sent her to surgery and she would have survived.
The Estate's expert witness, Dr. Wohlgelernter, testified that "[h]ad Mrs. Monroe undergone thorough testing during the hospitalization, it's my opinion that aortic dissection, also known [as] dissecting aortic aneurysm, would have been detected and that she would have been referred for surgery that would have successfully treated this condition and prevented her subsequent death." Finally, in his closing argument, the Estate's counsel argued:
The first question you're going to get, and again I'm paraphrasing these, was there negligence by Dr. Krolick which was the legal cause and remember, we talked about that, of Joan's death, yes or no. That of course is the most important question in this case. And from all of the things that we've been talking about, ranging from the obvious common sense to all the contradictions of Dr. Krolick, to all of evidence supporting Dr. Wohlgelernter, all the evidence that you've heard, all the impeachment, the studies that were used to impeach, all the things you've heard, can there be any questions that Dr. Krolick failed to go to a simple next step which would have more likely than not prevented this death? That's it. And that question should be answered, yes.
The Estate's entire case was based on the theory that but for Dr. Krolick's negligence, Monroe would not have died. The Estate presented no evidence that Monroe's death was caused by both the natural progression of her medical condition and *916 Dr. Krolick's failure to intervene. All the Estate's evidence indicated that had Dr. Krolick properly diagnosed the problem, Monroe would not have died. Thus, the Estate's evidence did not support the giving of the concurring cause instruction, nor did the jury need the instruction to decide the issue presented in the case.
Neither did Dr. Krolick's evidence point to Monroe's condition at the time of his examining her as the cause of her death. In fact, he argued that at the time of Monroe's admission, she did not have the dissected aorta and that accordingly his treatment was in keeping with the standard of care required. As such, there was no evidence presented by the Estate or Dr. Krolick to support the Estate's argument that Dr. Krolick's failure was but one of two or more causes of Monroe's death.
As Dr. Krolick pointed out to the trial court, the facts of this case are more closely akin to those in Goldschmidt v. Holman, 571 So.2d 422 (Fla.1990). In that case, the Holmans sued Goldschmidt for failing to diagnose and properly treat their daughter's appendicitis. The trial court refused to give the concurring cause instruction at trial, and after the jury returned a verdict in favor of Goldschmidt, the Holmans appealed. The district court reversed the judgment, finding that the trial court erred in denying the requested instruction.
In quashing the district court's opinion, the Florida Supreme Court defined "concurring causes" as "two separate and distinct causes that operate contemporaneously to produce a single injury." Id. at 424. The court went on to observe that for an error to require the granting of a new trial, it must have resulted in a miscarriage of justice, which arises when the instructions are such that they mislead or confuse the jury. Id. at 425.
The Holmans' expert testified that had Goldschmidt not been negligent, the child would have been operated on and sent home completely well. Goldschmidt's defense was strictly based on his denial of negligence. Thus, there was no evidence submitted that there was more than one cause of the injury of which the Holmans complained. The court concluded that there was no reasonable possibility that the jury was misled by the failure to give the instruction.
The same analysis applies to this case. Because the whole of the Estate's case was that Dr. Krolick's negligence was the cause of Monroe's death, and because the basis of Dr. Krolick's defense was that he was not negligent due to the fact that the aortic tear did not exist upon Monroe's initial hospitalization, there was no evidence presented to the jury to support the giving of the concurring cause instruction. The standard jury instruction on negligence that the trial court gave properly explained the law regarding the Estate's theory that but for Dr. Krolick's negligence, Monroe would not have died. Accordingly, we cannot see any reasonable possibility that the jury was misled or confused by the failure to give the concurring cause instruction.
Therefore, we conclude that the trial judge abused his discretion in granting the motion for new trial. The absence of evidence to support the instruction combined with the application of the reasoning found in Goldschmidt leads us to conclude that under the more limited application of the abuse of discretion standard, the trial judge's decision here was an abuse of discretion and must be reversed.
Reversed and remanded with instructions to reinstate the original jury verdict.
CASANUEVA and STRINGER, JJ., Concur.
NOTES
[1] Although the Estate originally included Monroe's family physician and the hospital as defendants, the Estate settled with these parties prior to trial.
[2] Fla. Std. Jury Instr. (Civ.) 5.1(b).
[3] Fla. Std. Jury Instr. (Civ.) 5.1(c).
[4] Fla. Std. Jury Instr. (Civ.) 5.1(a).
[5] The trial court's order is silent with regard to the intervening cause instruction. It therefore must be assumed that the requested relief was denied as to this ground. Furthermore, the Estate did not file a cross-appeal on this issue, nor is it included in the arguments considered herein.
[6] It is very difficult to see the difference between the so called "abuse of discretion standard" applied strictly, and in such a way as to afford the appellate court an equal footing with the trial judge in reviewing his ruling, and the traditional de novo standard applied to conclusions of law.