998 So.2d 1201 (2009)
Donald MAYNARD, Appellant,
v.
The FLORIDA BOARD OF EDUCATION, acting by and through the UNIVERSITY OF SOUTH FLORIDA, Appellee.
No. 2D06-5367.
District Court of Appeal of Florida, Second District.
January 16, 2009.
*1202 Wendolyn S. Busch and J. Meredith Wester of Mechanik Nuccio Hearne & Wester, P.A., Lutz, Appellant.
Marie Tomassi, John D. Goldsmith, and Brigid A. Merenda of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., St. Petersburg; and Jane Haughney, Assistant Attorney, University of South Florida, Tampa, for Appellee.
DAVIS, Judge.
This action arises out of a contract between Donald Maynard and the University of South Florida ("the University") that regulated the terms and conditions of Maynard's participation as a resident in the University's surgical residency program. The University's decision to terminate Maynard from the program resulted in both state and federal litigation, culminating in the instant appeal.
On appeal, Maynard challenges the trial court's final judgment entered on the jury's verdict finding against him on his breach of contract and retaliation claims and finding in favor of the University on its counterclaim for malicious prosecution.[1] Maynard argues that the jury's verdict on the University's counterclaim is barred by law and must be set aside. He also argues that the trial court committed reversible error in denying his motion to sever his claims from the University's counterclaim prior to trial and by denying his motion for a new trial. He argues that the erroneous admission of prejudicial evidence regarding the disposition of the prior federal lawsuit denied him a fair trial. We reverse in part and affirm in part.
As a participant in the University's surgical residency program, Maynard entered into a contract with the University that regulated the terms and conditions of his continued participation in the five-year program. As Maynard completed his fourth year of the program, he was advised by the University that there were concerns about his progress in the program. An agreement was reached as to what the University expected of him; however, there was no agreement as to whether the University's concerns were valid. As a result, Maynard filed discrimination complaints with the Equal Employment Opportunities Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") in December 1999, alleging that he was the victim of racial discrimination.
On April 17, 2000, Maynard was notified by the University that his contract had been terminated and that he was no longer a resident in the program. In August 2000, Maynard filed a nine-count complaint against the University in the United States District Court for the Middle District of Florida. The complaint included a claim for breach of contract; several claims under Title 42, United States Code Section 1983; several claims under various sections of the Florida Constitution; a claim for Equal Protection under the United States Constitution; and a claim for violation of Title VII of the Civil Rights Act of *1203 1964. In response, the University moved for summary judgment.
In September 2002, the federal district court granted the University's motion for summary judgment. The district court concluded that the Eleventh Amendment to the United States Constitution divested the federal courts of jurisdiction over certain claims made by a citizen against a state. This applied to the Equal Protection claim, the alleged violations of 42 USC § 1983, and the breach of contract claim. Finally, the federal district court ruled against Maynard on count four, the alleged violation of Title VII, finding that he had failed to plead a prima facie case. Specifically, the district court found that Maynard had not alleged that other similarly situated individuals were treated differently than himself. The district court's ruling was thereafter affirmed on appeal by the Eleventh Circuit Court of Appeals. See Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ., 342 F.3d 1281 (11th Cir.2003).
Immediately thereafter, Maynard filed his three-count complaint in the Thirteenth Judicial Circuit. In his complaint, Maynard alleged breach of contract, breach of implied duty of good faith and fair dealing, and retaliation under the Florida Civil Rights Act.[2] In response, the University filed its answer and included counterclaims for malicious prosecution and abuse of process. The University alleged that the ruling of the federal district court resolved all of the parties' issues and that the filing of "this civil suit" was motivated by malice and intended to embarrass the University.[3]
During the course of the litigation, Maynard moved to sever his claims from those of the University. He argued that to allow the jury to learn of the federal district court's ruling would prejudice the jury's consideration of his claims. The University argued that the counterclaims were compulsory and should be tried along with Maynard's claims. The trial court found the University's counterclaims to be compulsory counterclaims, denied Maynard's motion, and ordered that the issues proceed to jury trial together. Following trial, the jury found for the University both on Maynard's claims and on the University's counterclaim. Based on the jury's verdict, the trial court entered a final judgment ordering Maynard to pay the University $167,993 for the malicious prosecution claim.
Following the entry of final judgment, Maynard filed a motion to set aside the verdict and judgment on the malicious prosecution counterclaim and a motion for new trial on his breach of contract and retaliation claims. The basis of the motion to set aside was that the University lacked standing to file the claim. At the hearing on the motion, Maynard pointed out that pursuant to Cate v. Oldham, 450 So.2d 224 (Fla. 1984), the University, as a state entity, could not maintain an action for malicious prosecution against one who has sued the state without success. Maynard suggested that this prohibition on the state seeking relief on a malicious prosecution *1204 claim was tantamount to the court lacking jurisdiction to hear the claim and that any relief awarded was a nullity. He further argued that if the trial court granted his motion to set aside the malicious prosecution verdict, he would be entitled to a new trial on his claims because much of the evidence admitted in support of the malicious prosecution claim was prejudicial to his claims and would have been inadmissible but for the malicious prosecution claim.
The University argued that a lack of standing is not the same as lack of jurisdiction and that Maynard had waived this defense by failing to plead it as an affirmative defense. The trial court denied Maynard's motion to set aside the verdict and judgment, as well as his motion for new trial. Maynard now appeals the final judgment.
To resolve the challenge to the judgment on the malicious prosecution claim, we must first determine if the University may bring such a claim and, if not, whether this defense is waived if not pleaded as an affirmative defense. We begin with an analysis of Cate, 450 So.2d 224. In that case, the Florida Supreme Court responded to the following certified question posed by the Eleventh Circuit Court of Appeals: "Under the common law of Florida, may a state official who has been sued in his official capacity for alleged negligence in the exercise of his official duties, maintain an action for malicious prosecution against plaintiffs in the negligence action?" Id. at 224. The supreme court responded in the negative.
The facts of Cate are complex. Mary Bradham died as the result of a battery committed by her estranged husband. Kenneth Cate, as attorney for Bradham's estate, filed a wrongful death action against the state and Gordon Oldham, the state attorney. In that action, Cate alleged that Oldham knew of Bradham's husband's dangerous propensities but that he did not properly investigate and prosecute the husband. The action ended with the trial court entering a summary judgment in favor of the defendants. Oldham individually then filed a malicious prosecution action against Cate and his law firm, alleging that the wrongful death action was based on malice. Subsequently, the state and Oldham in his capacity as state attorney filed an additional malicious prosecution action against Cate.
Cate moved to dismiss the individual action, but the motion was denied. Cate then filed a petition for injunctive relief and declaratory relief in the federal district court. He alleged that the malicious prosecution actions were a violation of his first amendment right to free speech. The federal district court dismissed Cate's petition related to the state and Oldham in his official capacity. Cate appealed that ruling to the Eleventh Circuit, which then certified the question to the Florida Supreme Court.
The Florida Supreme Court determined that the right to present a complaint to the government regarding the government's conduct is essential. The court also determined that at common law there must be a showing of special damage before an action of malicious prosecution could be brought. That is, establishing the malicious nature of the prosecution was insufficient. With these two findings, and after a review of the scarce case law on the subject, the Florida Supreme Court concluded, "There simply is no historical basis for a state officer to retaliate with a malicious prosecution action when he has been sued in his official capacity. Malicious prosecution is considered a personal tort. The gravamen of the action is injury to character." Id. at 227 (citation omitted). Based on this conclusion, the court determined that the common law of Florida does not allow a state *1205 official who has been sued in his official capacity to "maintain" a malicious prosecution action. Id.
Subsequently, the Eleventh Circuit read this holding in a broader context: "The State of Florida provides extra security for this right by forbidding state officials or state entities from suing citizens for malicious prosecution. See Cate v. Oldham, 450 So.2d 224, 225-26 (Fla.1984)." United States v. Pendergraft, 297 F.3d 1198, 1207 n. 7 (11th Cir.2002). This broader interpretation is based on the Cate court's discussion of other decisions that suggest that allowing such suits by the state would result in "self-censorship." Critics of the state would be "foreclosed" from bringing any complaint, fearing the expense if they failed to prove their allegations. Cate, 450 So.2d at 227. Although the Eleventh Circuit's analysis of Cate is not controlling, based on our own reading of Cate, we find Pendergraft persuasive. Accordingly, we conclude that a state entity which has been sued may not "maintain" a malicious prosecution action against the individual who brought the original action.
The next question to be resolved is whether Maynard waived this argument by failing to raise it as an affirmative defense in the trial court proceeding. The University cites the Florida Supreme Court's decision in Krivanek v. Take Back Tampa Political Committee, 625 So.2d 840 (Fla.1993), as support for this proposition. In that case, the committee sought mandamus relief in the trial court, asking that Krivanek, the Hillsborough County Supervisor of Elections, be ordered to count the signatures of certain voters in its petition drive. The trial court granted the relief, and that decision was affirmed by this court. Krivanek v. Take Back Tampa Political Comm., 603 So.2d 528 (Fla. 2d DCA 1992). Upon seeking review in the Florida Supreme Court, Krivanek raised for the first time the issue of whether the committee had standing to seek such relief. The supreme court came to the following conclusion:
With regard to the first issue, we find that Krivanek has waived the right to raise the issue of standing because this issue has been raised for the first time in her petition to this Court. The issue of standing should have been raised as an affirmative defense before the trial court, and Krivanek's failure to do so constitutes a waiver of that defense, precluding her from raising that issue now. See, e.g., Cowart v. City of West Palm Beach, 255 So.2d 673 (Fla.1971).
Krivanek, 625 So.2d at 842.
A plain reading of this language, upon which the University relies, suggests that the failure to raise the standing issue as an affirmative defense is a bar to further consideration. However, when we examine the case the Krivanek court cites, that proposition is not so clear. In Cowart, 255 So.2d 673, the issue was whether the natural father of a child born out of wedlock had standing to pursue an action for the wrongful death of his son. At trial, the legitimacy of the child was never raised, and the jury returned a verdict of $20,000 in favor of the father. It was not until the case was on appeal before the Fourth District that the city raised standing as a defense for the first time. The Fourth District ruled that the issue of standing involved a "fundamental right" and could be raised for the first time on appeal. City of W. Palm Beach v. Cowart, 241 So.2d 748 (Fla. 4th DCA 1970). In reaching that decision, the Fourth District relied on Love v. Hannah, 72 So.2d 39 (Fla. 1954).
However, when the Florida Supreme Court reviewed the Fourth District's opinion in Cowart, it determined that the district *1206 court had misread its holding in Love. The issue in Love was who had standing to bring a wrongful death action under the statute in effect at that time. The administrator of an estate had filed a wrongful death action that had proceeded to jury trial resulting in a verdict for the plaintiff. The defendant did not raise the issue of standing by an affirmative defense. However, following the trial, the defendant did move for summary judgment and new trial. The motion for summary judgment raised the issue of whether the plaintiff had the standing to "maintain" the suit.
Based on this set of facts, the Love court concluded:
It is generally true that on appeal the parties are restricted to the theory of the case as tried in the lower court. This principle has certain well recognized exceptions, one of which is that if an error in the lower court affects fundamental rights, it may be raised for the first time on appeal. Moreover, in this case, it cannot be said that the question which we are discussing was raised for the first time here. On the contrary, the motion for new trial, on the ground that the verdict was contrary to the law and the evidence, raised the question in its broadest sense, and the motion for summary judgmenteven if not properly filedbrought such fact to the Court's attention during the term and a review of the lower Court's ruling on those points is not raising the question here for the first time.
Love, 72 So.2d at 43 (citations omitted).
In Cowart, 255 So.2d 673, the Florida Supreme Court pointed out that the district court erred in applying Love by focusing on the initial language that presumably allows one to raise a "fundamental right" for the first time on appeal. The supreme court further noted that the basis of its holding in Love was the fact that the issue of standing had been raised at the trial court, albeit after the jury's verdict. Applying this portion of the holding of Love, the court determined that the district court had erred in ruling that the issue of standing could be raised for the first time on appeal. Cowart, 255 So.2d at 674. In so ruling, the Cowart court did not recede from the language in Love that suggests that if the issue is raised in the trial court, even after the verdict is rendered, the issue is preserved.
Based on this review, we reject the University's argument that because Maynard did not raise standing as an affirmative defense prior to trial, he waived the issue. Our reading of Cowart, 255 So.2d 673, leads us to conclude that the pertinent question is whether the issue was raised at the trial court, not how it was raised. That is, when read in light of Love, the language that the University cites supports the conclusion that standing may not be raised for the first time on appeal; however, it does not necessarily require that standing be raised only by means of an affirmative defense.
Here, since Maynard did raise the issue of standing below in his motion to set aside the verdict and judgment, we now have before us the issue of standing in a procedural posture similar to that before the Love court. Based on the ruling in Love, and considering that the Cowart court tacitly approved Love, we conclude that because he made the argument before the trial court that a state entity may not maintain a malicious prosecution action against an individual, the issue has not been waived. Accordingly, the trial court erred in not granting Maynard's motion to set aside the verdict and judgment on the malicious prosecution claim. We therefore reverse the final judgment as to that claim and remand with instructions that the trial *1207 court enter an order dismissing the University's malicious prosecution claim.
Having determined that the University was not entitled to raise the malicious prosecution claim against Maynard, we must now address whether Maynard is entitled to a new trial on his original claims of breach of contract and retaliation. After denying Maynard's posttrial motion to set aside the verdict in the malicious prosecution counterclaim, the trial court also denied Maynard's motion for a new trial on his breach of contract and retaliation claims. Maynard based his motion on the same arguments that he makes on appeal.
In his complaint, Maynard alleged that the University failed to comply with the terms of the contract in terminating his participation in the residency program and that his termination by the University was in retaliation to his filing a complaint of discrimination with the EEOC and the FCHR. Maynard argues that the evidence presented to the jury as part of the University's malicious prosecution claim regarding his previous federal lawsuit against the University was misleading and prejudicial to the jury's consideration of his claims. In particular, Maynard maintains that the trial court would not have made the following statement to the jury but for the malicious prosecution claim:
Based on the record evidence in front of Judge Elizabeth Kovachevich at the time of her ruling, she held there was insufficient record evidence to establish a prima facie case of discrimination and her decision was appealed to the Eleventh Circuit Court of Appeals and the decision was affirmed.
Maynard argues that this language was prejudicial because it confused jurors by introducing evidence of the federal district court's ruling that would be irrelevant and inadmissible in a trial at which only his breach of contract and retaliation claims were at issue. Maynard points out that the district court did not address the merits of these claims and that the language misled the jury to believe that the federal court already had ruled against Maynard on the merits of the same issues the jury was to consider.
Based on our review of the record, we conclude that the trial court has not made a ruling on the prejudicial effect of this information on a trial of only Maynard's claims. At the hearing on the motion for new trial, the trial court labored under the continuing understanding that the malicious prosecution claim was proper and that the information regarding the disposition of the federal case was relevant as to the University's counterclaim. The trial court must now determine the relevance and admissibility of this evidence with regard to Maynard's claims alone. See Krolick v. Monroe ex rel. Monroe, 909 So.2d 910, 914 (Fla. 2d DCA 2005) ("The trial judge who must decide whether to grant a new trial on the proffered ground that some reversible error of law occurred at some point during the trial need only ask himself if there was error and if so whether the error was substantially prejudicial."). Since the trial court has never addressed this question, we will not do so for the first time on appeal. See Miller v. Miller, 709 So.2d 644, 645 (Fla. 2d DCA 1998) ("We cannot address on appeal an issue not ruled upon by the circuit court."); see also Sierra ex rel. Sierra v. Pub. Health Trust of Dade County, 661 So.2d 1296, 1298 (Fla. 3d DCA 1995) ("An appellate court is reactive; it can only review asserted errors made by lower tribunals.... Appellate courts may not decide issues that were not ruled on by a trial court in the first instance.").
Since Maynard raised this same issue before the trial court by his motion for a *1208 new trial, which was denied, we cannot conclude that he waived this issue.[4]
We therefore reverse the denial of Maynard's motion for a new trial and remand for the trial court to reconsider that motion in light of this court's reversal of the final judgment as to the University's malicious prosecution counterclaim.
Having reversed the final judgment on the malicious prosecution claim, we need not consider issue three raised by Maynard regarding the trial court's denial of his motion for summary judgment on that claim. However, because our reversal of the final judgment is based on our reading of the Florida Supreme Court's opinions in Love, Cowart, and Krivanek, we certify the following question as one of great public importance:
IN APPLYING THE DECISIONS OF LOVE V. HANNAH, 72 So.2d 39 (Fla. 1954), COWART V. CITY OF WEST PALM BEACH, 255 So.2d 673 (Fla. 1971), AND KRIVANEK V. TAKE BACK TAMPA POLITICAL COMMITTEE, 625 So.2d 840 (Fla.1993), IS THE DEFENSE OF LACK OF STANDING TO BRING A CAUSE OF ACTION PRESERVED FOR APPELLATE REVIEW WHEN RAISED FOR THE FIRST TIME IN THE TRIAL COURT AFTER TRIAL BY A MOTION TO SET ASIDE BUT NOT IN AN AFFIRMATIVE DEFENSE FILED PRIOR TO TRIAL?
Reversed and remanded with instructions; question certified.
KELLY and VILLANTI, JJ., Concur.
NOTES
[1] The jury found in favor of Maynard on the University's abuse of process counterclaim.
[2] The trial court granted the University's motion to dismiss the good faith claim and that issue is not included in this appeal.
[3] The basis of the counterclaim filed by the University is not totally clear from the pleadings. After alleging that the federal district court ruled in favor of the University on "the merits and in its defense of the claims alleged in the Federal case," the University then alleged that "Maynard caused this civil suit to occur as a result of malice and in an attempt to embarrass USF by falsely alleging race discrimination." However, it is clear from the instructions given to the jury that the University's claim of malice was in regard to Maynard's filing the federal litigation.
[4] Additionally, we note that Maynard unsuccessfully sought to bifurcate the counterclaims from his own claims and to keep this information from the jury via a motion in limine.