649 So.2d 883 (1995)
Betty AUSTER and Harold Auster, her husband, Appellants,
v.
GERTRUDE AND PHILIP STRAX BREAST CANCER DETECTION INSTITUTE, INC., and Philip Strax, M.D., Appellees.
No. 92-3094.
District Court of Appeal of Florida, Fourth District.
January 25, 1995.
*885 Karen J. Haas of Law Offices of Karen J. Haas, and Janice Gallagher of Spence, Payne, Masington & Needle, P.A., Miami, for appellants.
Douglas M. McIntosh and James C. Sawran of McIntosh, Sawran and Craven, P.A., Fort Lauderdale, for appellee  Gertrude and Philip Strax Breast Cancer Detection Institute, Inc.
J. Lorraine Brennan of Womack & Bass, P.A., Miami, for appellee  Philip Strax, M.D.
PER CURIAM.
This is an appeal from a final judgment in favor of appellees in a medical malpractice case and from an order denying appellants' motion for new trial. We reverse and remand for a new trial.
Appellants asserted that Mrs. Auster incurred injuries as a result of an alleged misinterpretation of mammograms performed at the Gertrude and Philip Strax Breast Cancer Detection Institute, Inc., (Institute) and interpreted by Dr. Strax and other physicians in 1988, 1989, and 1990. Dr. Strax, licensed to practice medicine in New York but not licensed in Florida, allegedly acted as a medical consultant to the Institute and often read patients' mammogram results. Dr. Strax read Mrs. Auster's mammograms in 1989 and 1990 and determined that no cancer was present. The Institute reported these mammogram results to Mrs. Auster's private gynecologist, Dr. Ostreich, each year.
Although appellees did not detect any breast cancer from the mammograms and physical examinations performed at the Institute, Mrs. Auster's gynecologist found a suspicious lump in her breast which required further study thirteen days after the 1990 negative result and recommended her returning to the Institute. A physician associated with the Institute confirmed on her return that the lump in Mrs. Auster's breast was cancerous. On July 26, 1990, Mrs. Auster underwent a radical mastectomy of the right breast with removal of lymph nodes, followed by four months of chemotherapy.
Appellants offered the testimony of Dr. Ostreich that he discovered a lump in Mrs. Auster's breast which was inconsistent with appellees' evaluation. Appellants also offered the testimony of Dr. Henry that the two year delay in diagnosis of Mrs. Auster's cancer affected her chance of survival.
Several experts concluded that appellees did not deviate from the prevailing standard of care in evaluating Mrs. Auster's condition. Dr. Tufts found no evidence of any suspicious areas on the x-rays which would have required more extensive testing. Dr. Sutherland and Dr. Tomaselli stated that breast cancer tumors can grow rapidly, suggesting that the cancer appeared after appellees performed the last mammogram in 1990. Two of appellees' experts opined, however, that Mrs. Auster had a slow growing type of cancer. Dr. Villa could not state when the lymphatic system was first affected and concluded that the life span of a seventy year old woman such as Mrs. Auster would not be impacted by the occurrence of the cancer. Dr. Pinck, who did not find evidence of cancer on the mammograms, presented the possibility that Mrs. Auster's cancer fell within the category of cancers which do not displace any structures within the breast and was thus not visible.
We conclude that based on the conflicting expert testimony the trial court erred when it gave appellees' requested jury instructions on professional negligence and erred when it failed to give appellants' requested instructions on concurrent cause and aggravation of a preexisting condition.
Under these facts, the trial court correctly gave Florida Standard Jury Instruction (Civil) 4.2(a) on professional negligence:

*886 Negligence is the failure to use reasonable care. Reasonable care on the part of a physician or breast cancer detection institute is that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by similar and reasonably careful physicians and breast cancer detections institutes.
Comment 1 to this instruction advised: "The charge is adapted from § 768.45(1) and is intended to embody the statutory definition of "prevailing professional standard of care" without using that expression itself, which is potentially confusing." Fla.Std.Jury Instr. (Civ.) 4.2, Comment 1. Section 768.45(1), Florida Statutes, (1985), is currently codified at section 766.102(1), Florida Statutes (1993). They both provide:
In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 768.50(2)(b), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.
The trial court did not read this statute, but instead, read section 766.102(3)(a), Florida Statutes (1993), pursuant to appellees' request for a special instruction:
If the injury is claimed to have resulted from the negligent affirmative medical intervention of the health care provider, the claimant must, in order to prove a breach of the prevailing professional standard of care, show that the injury was not within the necessary or reasonably foreseeable results of the surgical, medicinal, or diagnostic procedure constituting the medical intervention, if the intervention from which the injury is alleged to have resulted was carried out in accordance with the prevailing professional standard of care by a reasonably prudent similar health care provider.
By so charging the jury with the standard in section 766.102(3), the trial court generated that confusion which the standard instruction attempted to avoid by eliminating the "prevailing professional standard of care" language. Furthermore, we conclude that section 766.102(3) is not applicable under these facts[1] and contains other language which is inherently confusing.[2]
We also agree with appellants that the trial court should have instructed the jury *887 upon concurring cause and aggravation of a preexisting condition.[3]
This court in Cornette v. Spalding & Evenflo Cos., Inc., 608 So.2d 144 (Fla. 4th DCA 1992), adopted the Fifth District Court's test for determining when the failure to give a requested jury instruction results in reversible error. See Orange County v. Piper, 523 So.2d 196 (Fla. 5th DCA), rev. denied, 531 So.2d 1354 (Fla. 1988). We adhere to the rule pronounced in Piper that the failure to give a requested instruction constitutes reversible error when the complaining party establishes that the requested instruction accurately states the applicable law, the facts in the case support giving the instruction, and the instruction was necessary to allow the jury to properly resolve all issues in the case. Appellants have demonstrated that the trial court's failure to give Florida Standard Jury Instructions (Civil) 5.1(b) and 6.2(b) resulted in reversible error.
Instruction 5.1(b) is required "where the defendant's negligence acts in combination with the plaintiff's physical conditions to produce the resulting injury," and the defendant's negligence is one cause, but not necessarily the only cause, leading to the plaintiff's injury. Marinelli v. Grace, 608 So.2d 833, 834 (Fla. 4th DCA 1992). As in the instant case, the jury should have been able to decide whether appellees' alleged negligence in failing to diagnose acted in concert with the Mrs. Auster's condition to produce the injury. In Miller v. Court, 510 So.2d 926 (Fla. 4th DCA 1987), this court concluded that the giving of instruction 5.1(b) was imperative where a physician's action of taking the plaintiff off medication without prescribing an alternative treatment exacerbated the plaintiff's preexisting diabetic condition causing the plaintiff's coma. The Miller case illustrates that when a preexisting condition advances without medical intervention, similar to this case, the resulting injury is caused by both the natural progression of the condition or disease and the physician's failure to impede its natural course. Under those circumstances the evidence presented at trial in this case supported the concurrent cause instruction.
The use of the aggravation instruction was also mandated in connection with the concurring cause instruction. Once a jury determines that the defendant's negligence caused in full or in part the plaintiff's injury, instruction 6.2(b) would then permit the jury to assess damages against the negligent defendant for only that portion of the injury resulting from the aggravation or acceleration of the preexisting condition or the activation of a latent condition. To avoid any confusion, a trial court should read the instruction on concurrent cause in conjunction with the damages instruction on aggravation. See Marinelli, 608 So.2d at 834 (concluding that the aggravation instruction which allows a jury to assess the damages based on any aggravation of the preexisting condition is insufficient against any risk of confusion without also reading the concurrent cause instruction).
The First District Court of Appeal confronted a factually similar scenario in Swain v. Curry, 595 So.2d 168 (Fla. 1st DCA 1992), where the plaintiff's physician failed to diagnose the presence of breast cancer after he *888 performed a mammogram and physical examination of the plaintiff. The plaintiff ultimately underwent a modified radical mastectomy. In Swain, the court determined that on remand for a new trial the jury should be instructed that the negligent delay in the diagnosis of the disease warranted the reading of standard instruction 6.2(b) on aggravation. In the instant case, if the jury determined that appellees negligently delayed diagnosis during the first stages of Mrs. Auster's breast cancer, any aggravation or increase in the injury after that time would constitute a compensable injury.
Whatever further difficulties have been called to our attention in this case do not represent error or harmful error, and can be remedied by pretrial focus and, if necessary, appropriate pretrial motions in limine. While some cases require that the pleadings be precluded from amendment, on remand, this case does not require such restriction.
REVERSED and REMANDED.
GLICKSTEIN, WARNER and PARIENTE, JJ. concur.
NOTES
[1] Section 766.102(3) may not apply where the alleged negligence arises from a failure to diagnose. Unlike other statutory provisions in which the legislature expressly limited the liability of a health care provider to those situations where damage results from a failure to provide medical care or omission in treatment, section 766.102(3) is silent on this point. See, e.g., § 768.13(2)(b), Fla. Stat. (creating immunity from civil liability for a licensed physician rendering emergency care in an emergency room or trauma center unless civil damages result from "providing, or failing to provide, medical care or treatment"). Therefore, with little guidance from the legislature or predecessor courts, we determine that the plain import of "affirmative medical intervention" requires some act beyond the mere failure to diagnose and render treatment before the plaintiff's burden of proof set forth in section 766.102(3) is triggered.
[2] Assuming the execution of a mammogram and performance of a physical examination to be a "diagnostic procedure" constituting an affirmative act of medical intervention, section 766.102(3) is susceptible to varying interpretations. It could be argued that it either (1) restates the law of causation and is thus superfluous, i.e., if the injury is not reasonably foreseeable then no breach of the prevailing standard of care occurred, or (2) expands the existing law by presenting the plaintiff with a second opportunity to prove a breach of the professional standard of care upon showing that the physician's actions were not reasonably foreseeable, even though the action was carried out with in the professional standard of care as defined in section 766.102(1). Under either interpretation, the potential for confusion is great and thus the trial court should not have provided the jury with this special instruction.
[3] Appellants requested that the trial court give the following in instruction on concurrent cause:

In order to be regarded as a legal cause of injury or damage, negligence need not be the only cause. Negligence may be a legal cause of injury or damage even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such injury or damage.
See Fla.Std.Jury Instr. (Civ.) 5.1(b). Appellants also requested the following jury instruction based on Florida Standard Jury Instruction (Civil) 6.2(b):
Any aggravation of an existing disease or physical defect or activation of any such latent condition, resulting from such injury. If you find that there was such an aggravation, you should determine, if you can, what portion of Betty Auster's condition resulted from the aggravation and make allowance in your verdict only for the aggravation. However, if you cannot make that determination or if it cannot be said that the condition would have existed apart from the injury, you should consider and make allowance in your verdict for the entire condition.