664 So.2d 968 (1995)
Michael ZIGMAN and Sharon Zigman, his wife, Appellants,
v.
Robert E. CLINE, M.D., Heart Surgery Associates, a general partnership, Cline Cardiovascular Associates, P.A., Appellees.
No. 93-01483.
District Court of Appeal of Florida, Fourth District.
April 7, 1995.
Rehearing Denied June 6, 1995.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., and Babbitt, Hazouri & Johnson, P.A., West Palm Beach, for appellants.
Shelley H. Lenicke of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Lane, P.A., Fort Lauderdale, for appellees.
FRANK, RICHARD H., Associate Judge.
Michael Zigman and his wife, Sharon Zigman, sued Dr. Robert E. Cline, a cardiovascular surgeon, for claimed medical negligence occurring during the conduct of rarely performed and intensely complicated surgery to correct the severe and normally fatal injuries Zigman suffered in an automobile accident. Although Zigman's life was saved, he emerged from the operation a paraplegic, a condition he attributes to Dr. Cline's malpractice. Dr. Cline was found not negligent by a jury, a result the Zigmans assign to the trial court's failure to give an instruction on concurring cause. We agree that the trial court should have given the instruction, and the failure to do so prejudiced the jury's assessment of this matter. The second issue raised by the Zigmans, concerning the court's admission of opinions of Dr. Cline expressed by a defense witness, is meritless.
An automobile accident left Zigman in immediate and extremely real danger of death as a result of a severe insult to his heart and cardiovascular system. Indeed, the impact was of such a magnitude that his descending aorta ripped at a point proximate to his heart. This record leaves not a trace of doubt that but for the fortuitous formation of a blood clot or hematoma at the site of Zigman's transected aorta, he would have bled to death prior to medical intervention. However, in spite of numerous injuries in addition to the torn aorta, Zigman survived *969 the accident and, moribund, he reached Dr. Cline's medical care.
Dr. Cline undertook the task of repairing Zigman's aorta pursuant to a "clamp and sew" technique. The Zigmans asserted in the trial court, inter alia, that Dr. Cline's approach to the surgical problem was incorrect and that a resultant extensive period of interrupted blood supply to his spinal cord produced a profound paralysis reducing him to a state of virtually total inability to function.
We are quick to note in our assessment of this proceeding that abundant expert testimony is found in the record unmistakably indicating that Dr. Cline was confronted with a patient whose multiple injuries presented difficult and competing methods of treatment. Indeed, the record reflects that Zigman's probability of survival at the moment immediately following the trauma was at best minimal and that in circumstances paralleling Zigman's, death is the rule. Dr. Cline, however, succeeded in preserving Zigman's life, albeit in an impaired state. In spite of the evidence suggesting that Zigman's paralysis was an inevitable consequence of the injury he sustained and the repair he required, we are reluctantly compelled to reverse, to vacate the verdict, and to remand for a new trial. The trial court erred in not giving the standard concurring cause charge.
We are no less compelled to note that one of Zigman's attorneys created confusion at the charge conference by abandoning after tendering the "concurring cause" instruction contemplated in 5.1(b) of the Standard Jury Instructions. Another of Zigman's attorneys subsequently sought the instruction, but at that juncture the trial court declined, without explanation, to give the charge. In reaching our conclusion that the charge should have been given, we do not hesitate to observe that the Zigmans' attorneys' shift in position may have induced the court to believe the charge was not warranted. Nonetheless, the record discloses some evidence, indeed, even from one of the Zigmans' expert witnesses, that the automobile accident and the subsequent surgery conjoined in a "constellation" of circumstances leading to Zigman's paralysis.
The standard concurring cause instruction provides that, in order to be a legal cause of loss, injury, or damage, negligence need not be the only cause; negligence may be a legal cause of the harm even though acting in combination with some other cause, if the other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing the harm. Standard Jury Instruction 5.1(b). The notes to the instructions describe the charge's purpose as a negation of the idea that the defendant should be excused from the consequences of negligence on the ground that a concurring cause contributed to the same damage.
Moreover, any uncertainty surrounding the use of the concurring cause instruction in this case may well have been contributed to by Zigman's attorneys' patent attempts to prevent Dr. Cline from shifting any blame for alleged surgical injuries Zigman experienced to the driver of the tortiously operated automobile or perhaps to Zigman's own contributory negligence. Although Dr. Cline contended that he was hampered in the presentation of his case by the trial court's striking of his affirmative defenses stemming from the automobile accident, the most significant of those defenses were reinstated and evidence was presented disclosing that Dr. Cline saved Zigman's life; that, prior to the medical treatment by Dr. Cline, another person or entity had been negligent; and that other treating physicians might have aggravated Zigman's condition. Of critical importance is the fact that Dr. Cline was able to present expert testimony that the injuries sustained in the automobile accident caused Zigman's paralysis to appear after the passage of time. Such testimony would shift the focus from the physician's choice of surgical treatment and the skill with which it was performed to Zigman's pre-surgical condition. Thus, although not overwhelming, the evidence at trial created a concurring cause issue, and the Zigmans were entitled to an instruction on that law. Auster v. Gertrude and Philip Strax Breast Cancer Detection Institute, Inc., 649 So.2d 883 (Fla. 4th DCA *970 1995); Tilley v. Broward Hosp. Dist., 458 So.2d 817 (Fla. 4th DCA 1984); Klipper v. Government Employees Ins. Co., 622 So.2d 1141 (Fla. 2d DCA 1993).
Although the term "concurring" suggests that such causes of damage must occur "simultaneously," it has been held that temporally preceding conditions can conjoin with a defendant's subsequent alleged negligence. As is stated in Marinelli v. Grace, 608 So.2d 833, 834 (Fla. 4th DCA 1992), rev. denied, 620 So.2d 761 (Fla. 1993), "[t]he 5.1(b) causation instruction is required where the defendant's negligence acts in combination with plaintiff's physical conditions to produce the resulting injury." We find merit in now Justice Anstead's special concurrence in Marinelli that "combining the provisions of 5.1(a) and 5.1(b) would be far more helpful to a jury than the present practice of reserving the use of 5.1(b) to those cases where the issues of another cause is apparent." Marinelli, 608 So.2d at 835. The use of the instruction is best illustrated in cases involving premature infants, where it has been held that the fact of prematurity may unite with the alleged negligence of the physician or hospital in subsequent treatment to form the evidentiary basis for a 5.1(b) instruction. Banks by and through Banks v. Hospital Corp. of America, 566 So.2d 544 (Fla. 4th DCA 1990), rev. denied, 577 So.2d 1326 (Fla. 1991); Tilley.
In this case Zigman focused upon Dr. Cline's alleged mistake in choosing to operate using a "clamp and sew" technique rather than the "femero-femoral bypass method" or the "Gott shunt method," surgical methodologies which may provide the physician with more time to perform the time-sensitive repair procedure. In addition to the asserted failure to choose the best surgical alternative, Zigman urges that Dr. Cline negligently performed the operation by placing the clamp too close to the wound in the aorta, with a resulting need to switch to a different procedure and a consequent increase of the time when the blood supply to the spinal cord was interrupted. The insufficiency of blood flow, Zigman contends, was the proximate cause of the paralysis.
Dr. Cline promoted the theory, however, that Zigman was destined to be paralyzed from the moment he miraculously emerged alive from the car accident  that the severe and complicated circumstances originating in his injuries, together with the essential surgical procedure to save his life, rendered him paraplegic. Although Dr. Cline's experts testified that Zigman's condition, wholly the product of the accident, ordained his paraplegia, the surgery was another factor in the result. Without the operation, however, the accident would have left Zigman not a paraplegic but dead.
Under any view of the case, it cannot be denied that the jury heard evidence of more than one cause of the plaintiff's injuries. Cf., Goldschmidt v. Holman, 571 So.2d 422 (Fla. 1990) (concurring cause instruction need not be given where evidence fails to indicate that preexisting injury is related to subsequent event). Without a concurring cause charge, the jury was inadequately instructed. See Banks; Barabas v. Rojas, 481 So.2d 1003 (Fla. 4th DCA 1986). The jury, faced with a man who would not be living were it not for Dr. Cline's actions, was forced into an all-or-nothing decision. If instructed that more than one cause could have contributed to Mr. Zigman's tragic plight, the jury would have been better able to evaluate the degree to which, if any, Dr. Cline's alleged negligence was a factor in the result.
Reversed and remanded for new trial.
PATTERSON, DAVID F., and ALTENBERND, CHRIS W., Associate Judges, concur.