824 So.2d 927 (2002)
Jade Lakay HART, A Minor, etc., et al., Appellants/Cross-Appellees,
v.
Louis STERN, M.D. and Wymore Ob/Gyn Specialists, P.A., Appellees/Cross-Appellants.
No. 5D01-2264.
District Court of Appeal of Florida, Fifth District.
June 28, 2002.
*928 Anthony J. Caggiano of Ward & Caggiano, P.A., Orlando, for Appellants/Cross-Appellees.
Paul A. Nugent of O'Hara Law Firm, Sanford, and Jennifer S. Carroll and John M. Porter of Law Offices of Jennifer S. Carroll, P.A., Palm Beach Gardens, for Appellees/Cross-Appellants.
SAWAYA, J.
In this medical malpractice case, the Appellants, Jade Lakay Hart, a minor by and through her parents, Rhonda Lagree and John Hart, and Rhonda Lagree and John Hart, individually, (collectively Hart) appeal the final judgment rendered in favor of the Appellees, Louis Stern, M.D., and Wymore OB/GYN Specialists, P.A., (collectively Stern) after a jury trial. We reverse because the trial court erred in refusing to instruct the jury on concurring causes and aggravation of a pre-existing disease or defect.[1]

Factual and Procedural Background
Jade Lakay Hart was born with. Erb's palsy which is an injury to the brachial *929 plexus nerves caused during pregnancy or childbirth. Hart sued Stern, the doctor who delivered Jade, alleging that when Jade's shoulders became stuck on the mother's pelvic bone during labor, Stern pulled too hard on Jade's head, stretching her neck and causing injury.[2]
During the trial, Hart called two experts, both board certified in obstetrics and gynecology, who testified that after review of the pertinent medical records, Jade presented with shoulder dystocia and that Stern, in an attempt to resolve this problem, applied excessive traction to Jade's head. Both experts testified that Stern's actions fell below the applicable standard of care and caused Jade to suffer permanent injury. Stern called two expert witnesses who testified that various causes contributed to Jade's injury, but that Stern's actions were not one of them. Both experts concluded that Stern's care and treatment in delivering Jade complied with the applicable standard of care.
During the charge conference, Hart requested that the trial court instruct the jury on concurrent causes and aggravation of a pre-existing injury or defect by giving the jury Florida Standard Jury Instructions 5.1(b) and 6.2(b). The trial court denied this request and the jury returned a verdict for Stern.
The issue we must resolve is whether the trial court erred in refusing to give the requested instructions. We will first discuss the standard of review applicable to decisions by trial courts whether to give requested jury instructions. We will next review the law applicable to concurring cause and aggravation of pre-existing injury instructions to determine whether the trial court erred in refusing to give these instructions to the jury.

The Standard of Review
Trial courts are generally accorded broad discretion in formulating jury instructions, and a decision not to give a requested instruction will not be reversed unless the error complained of resulted in a miscarriage of justice or the failure to give the instruction was reasonably calculated to confuse or mislead the jury. Reyka v. Halifax Hosp. Dist., 657 So.2d 967 (Fla. 5th DCA 1995); see also Barbour v. Brinker Florida, Inc., 801 So.2d 953 (Fla. 5th DCA 2001).
The party claiming reversible error stemming from the trial court's failure to give a requested jury instruction must show that: 1) the requested instruction accurately states the applicable law; 2) the evidence and testimony presented support giving the instruction; and 3) the instruction was necessary to allow the jury to properly resolve all of the issues in the case. Reyka; Orange County v. Piper, 523 So.2d 196 (Fla. 5th DCA), review denied, 531 So.2d 1354 (Fla.1988); see also Wransky v. Dalfo, 801 So.2d 239 (Fla. 4th DCA 2001).
Applying this standard of review, we will determine whether the failure to give the concurring cause and aggravation instructions constitutes reversible error. We will consider the concurring cause instruction first.

The Concurring Cause Instruction
Regarding the issue of causation, the trial court only gave Florida Standard Jury Instruction 5.1(a), which instructs that "[n]egligence is a legal cause of ... *930 injury ... if it directly and in natural and continuous sequence produces or contributes substantially to producing such ... injury ..., so that it can reasonably be said that, but for the negligence, the ... injury ... would not have occurred." Fla. Std. Jury Instr. (Civ.) 5.1(a). Hart, however, requested that the jury be given Florida Standard Jury Instruction 5.1(b)[3] on concurring causes. Stern's objection to giving the concurring cause instruction was sustained by the trial court. Hart contends that failure to give the instruction constitutes reversible error.
Florida courts generally define concurring causes as "two separate and distinct causes that operate contemporaneously to produce a single injury." Goldschmidt v. Holman, 571 So.2d 422, 424 (Fla.1990) (citation omitted). "Although the term `concurring' suggests that such causes of damage must occur `simultaneously,' it has been held that temporally preceding conditions can conjoin with a defendant's subsequent alleged negligence." Zigman v. Cline, 664 So.2d 968, 970 (Fla. 4th DCA), review denied, 661 So.2d 823 (Fla.1995); see also Cruz v. Plasencia, 778 So.2d 458 (Fla. 3d DCA 2001).
If a defendant's negligence operates in combination with the negligent act of another or a natural cause such as the plaintiff's pre-existing physical condition to cause an injury, the concurrent causation instruction should be given.[4] Specifically, in medical malpractice cases, concurrent causes occur when the injury is caused by the negligence of a health care provider acting upon and combined with the plaintiff's pre-existing physical condition.[5]
The primary purpose of the concurring cause instruction is to "negate[ ] the idea that a defendant is excused from the consequences of his negligence by reason of some other cause concurring in time and contributing to the same damage." Fla. Std. Jury Instr. (Civ.) 5.1(b) note on use; Zigman, 664 So.2d at 969; see also Hernandez v. State Farm Fire & Cas. Co., 700 So.2d 451, 453 (Fla. 4th DCA 1997) ("The purpose of the concurring cause instruction is to inform the jury that the defendant *931 is not excused from the consequences of his negligence by reason of some other cause concurring in time and contributing to the same damage.") (citation omitted).
Our analysis of the requested jury instruction leads us to conclude that it accurately states the law regarding concurring causation, and Stern does not contend otherwise in these proceedings. Stern does, however, argue that the evidence and testimony presented in the case do not warrant giving the instruction and that the instruction was not necessary to allow the jury to resolve the issues in the case.
Stern called two expert witnesses, Steven Clark, M.D., and Harlan Giles, M.D. Although both testified that Stern complied with the applicable standard of care in delivering Jade, they differed in their opinion about the cause of Jade's injury. Specifically, Dr. Clark testified that the injury could have been caused by being crowded inside the mother's uterus during pregnancy, stretching of the neck in the birth canal from the "cardinal movements of labor," excessive traction, and compression of the neck from shoulder dystocia. He stated that while it was possible the injury could have occurred "in utero" or from appropriate traction, it was more likely that it occurred from stretching during labor. Dr. Giles testified that a combination of factors occurred during labor and birth which may have caused the injury:
I think, as I've said repeatedly, it was a combination of the impaction of the shoulder to begin with, the mother's expulsive pushing efforts and the combination of Dr. Stern's hands going through these maneuvers that we've been discussing. All those things together in conjunction produced a stretch injury of the brachial plexus, no doubt.
Moreover, Dr. Giles was unable to conclude how much of Jade's injury was the result of causes other than Stern's application of traction to Jade. Specifically, Dr. Giles presented the following testimony:
Q. Are you now telling us that that's what did this?
A. I'm telling you it's a combination of the entire sequence of events. There's no one part of it in isolation that was the sole cause of the injury.
Q. How about this then? Dr. Stern's traction did play some part in causing this permanent brachial plexus injury; you'd agree with that?
A. I would agree that the traction in conjunction with the appropriate maneuvers would have played some contributory role to the brachial plexus stretch. Yes, I would.
Q. Now, how about this one: Can you separate out then the percentage of this injury caused by Dr. Stern's traction on that baby's head from any other cause?
A. You can't separate out anything of the sort. It's the combination of the mother's pushing efforts, the baby's spontaneous rotation, the impaction of the shoulder and the maneuvers that were used that we've been describing. All those things in combination produced the injury.
We conclude that the testimony of the experts called by Stern clearly presented to the jury a combination of causes that may have acted together to cause Jade's injury. Under any view of the testimony presented by Stern's experts, the jury heard evidence of more than one cause of the injuries and, therefore, the requested jury instruction on concurring causes was clearly warranted. Without the concurring cause instruction, the jury may have been left with the misimpression, based on the testimony of Stern's experts, that other factors contributed to Jade's injury and that if Stern's negligence was not the sole *932 and exclusive cause of the injury, he would not be negligent.[6] Moreover, the jury could have also been misled into believing that Stern's alleged negligence could not be a cause of the injury if Jade or her mother were already experiencing difficulty from a pre-existing condition. Cruz; Zigman. Thus when considering the testimony presented by Stern's experts, the jury in the instant case could not properly resolve the issue of causation without the concurring cause instruction.
Next we consider whether the trial court's failure to give the aggravation instruction in conjunction with the concurring cause instruction was improper.

The Aggravation Instruction
Hart also requested that the trial court instruct the jury on aggravation or activation of a pre-existing disease or defect. We find that the instruction requested by Hart, which was based on Florida Standard Jury Instruction 6.2(b), accurately states the law.[7] The genesis of the standard jury instruction and the general rule relating to aggravation of a pre-existing disease or defect is C.F. Hamblen, Inc. v. Owens, 127 Fla. 91, 172 So. 694 (1937), wherein the court stated:
It is settled law that where injuries aggravate an existing ailment or develop a latent one the person whose negligence caused the injury is required to respond in damages for the results of the disease as well as the original injury. In such cases the injury is the prime cause which opens the way to and sets in motion the other cause and the latter cannot be regarded as an independent cause of injury, nor can the wrongdoer be allowed to apportion the measure of responsibility to the initial cause. The defendant must respond in damages for such part of the diseased condition as his negligence has caused and if there can be no apportionment, or it cannot be said that the disease would have existed apart from the injury, then he is responsible for the diseased condition. 8 R.C.L. 437.
Id. at 696. "The rule of Hamblen v. Owens has as its purpose the prevention of a subsequent wrongdoer from escaping responsibility where his conduct contributed to the creation of the situation in which the problems of apportionment arose." Washewich v. LeFave, 248 So.2d 670, 673 (Fla. 4th DCA 1971). Thus "the injured party should be able to recover for his or her injuries and the recovery should not be *933 diminished because of a jury's inability to apportion injury between wrongdoers." Gross v. Lyons, 763 So.2d 276, 278 (Fla. 2000).
Stern contends that the aggravation instruction is not warranted and that it would have confused the jury had it been given. We conclude, based on our review of the evidence and testimony in the record, that Hart was entitled to a jury instruction on aggravation of a pre-existing disease or defect. Specifically, Dr. Clark indicated in his testimony that the injury could have been caused by Jade being crowded inside her mother's uterus during pregnancy, and Dr. Giles indicated in his testimony that Stern's actions may have played some part in causing or worsening the damage to Jade and that he could not apportion the damages that resulted from the various causes. Thus it was necessary to give the aggravation instruction to prevent the jury from being misled into believing that if it could not apportion the specific damage caused by Stern, Stern could not be found liable. Therefore, it was reversible error not to give the aggravation instruction in the instant case.
Hart contends that the argument relating to the aggravation instruction provides another basis for requiring that the concurring cause instruction be given. Specifically, Hart argues that when the aggravation instruction is required as it is in the instant case, the concurring cause instruction should also be given. His argument finds support in Thomason. The plaintiff in Thomason, based on the premise that the plaintiff had a pre-existing condition, requested instructions on both aggravation of a pre-existing injury and concurrent cause. The trial court gave the aggravation instruction, but refused to give the instruction on concurrent cause. This court reversed, holding:
The standard jury instruction on aggravation of a pre-existing injury or defect is a damage instruction. Gross v. Lyons, 721 So.2d 304 (Fla. 4th DCA 1998), review granted, 732 So.2d 326 (Fla.1999), and decision approved, 763 So.2d 276 (Fla.2000). That is, once a jury determines that the defendant's negligence caused in full or in part the plaintiff's injury, instruction 6.2(b) would permit the jury to assess damages against the negligent defendant for only that portion of the injury resulting from the aggravation or acceleration of the preexisting condition or the activation of a latent condition. It has repeatedly been held that to avoid any confusion concerning the jury's ability to hold a defendant liable where two or more causes join to produce an injury, a trial court should read the instruction on concurrent cause, in addition to the damage instruction on aggravation. See Esancy, supra; Dutcher v. Allstate Ins. Co., 655 So.2d 1217 (Fla. 4th DCA 1995); Marinelli v. Grace, 608 So.2d 833, 834 (Fla. 4th DCA 1992), review denied, 620 So.2d 761 (Fla.1993).
782 So.2d at 899; see also Auster.[8] In accordance with Thomason, Hart is correct *934 that the concurring cause instruction should have been given in conjunction with the aggravation instruction to allow the jury to properly resolve all of the issues in the case.[9]

Conclusion
We conclude, based on the evidence and testimony presented during the trial, that the concurring cause and aggravation instructions should have been given by the trial court. Moreover, the concurring cause instruction should have been given in conjunction with the aggravation instruction. Because these instructions were not given as requested by Hart, we reverse the judgment for Stern and remand for a new trial.
REVERSED and REMANDED.
THOMPSON, C.J., and GRIFFIN, J., concur.
NOTES
[1] Hart also argues on appeal that the trial court erred in admitting a certain training video on shoulder dystocia by the American College of Obstetricians and Gynecologists. Although this issue presented an alternative ground for reversal, we elect not to examine it further because of our disposition based on the erroneous jury instructions.

Stern filed a cross-appeal arguing that the trial judge erred in failing to grant a directed verdict in Stern's favor because there was no evidence of negligence. Even if this issue had not been made moot, we would conclude that this issue does not have merit and would affirm the trial judge's ruling denying the motion.
[2] When a baby's shoulder becomes stuck on the mother's pelvic bone, it is referred to as shoulder dystocia. Shoulder dystocia is not the injury complained of in the instant case, but the condition that allegedly precipitated it. The injury, Erb's palsy, is damage to the brachial plexus nerves, often caused by stretching of the baby's neck when a health care provider pulls on the baby's head to get its shoulder unstuck.
[3] Hart requested that the trial court give the following instruction to the jury on concurrent causation:

In order to be regarded as a legal cause of injury or damage, negligence need not be the only cause. Negligence may be a legal cause of injury or damage even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such injury or damage.
The requested instruction accurately tracks the language of Florida Standard Jury Instruction 5.1(b).
[4] Thomason v. Gordon, 782 So.2d 896, 898 (Fla. 5th DCA 2001) ("Several courts have recognized that where a defendant's negligence acts in combination with a plaintiff's physical condition to produce an injury, the concurring cause instruction of 5.1(b) is mandated.") (citing Esancy v. Hodges, 727 So.2d 308 (Fla. 2d DCA 1999)); Cruz, 778 So.2d at 460 (citing Marrero v. Salkind, 433 So.2d 1224 (Fla. 3d DCA 1983), petition for review denied, 444 So.2d 418 (Fla.1984); Goodman v. Becker, 430 So.2d 560 (Fla. 3d DCA 1983)).
[5] Zigman; Auster v. Gertrude & Philip Strax Breast Cancer Detection Inst., Inc., 649 So.2d 883 (Fla. 4th DCA 1995); Miller v. Court, 510 So.2d 926, 927 (Fla. 4th DCA 1987) ("The standard jury instruction 5.1(b) on concurrent causes is applicable when the plaintiff's injury is caused by a doctor's negligence, acting upon and combined with the plaintiff's preexisting physical condition.") (citing Goodman; Higgins v. Johnson, 434 So.2d 976 (Fla. 2d DCA 1983); Marrero), review denied, 523 So.2d 576 (Fla.1988); see also Reyka, 657 So.2d at 969 ("[T]he concurring cause instruction encompasses the medical malpractice situation where a health care provider is coping with an injury or condition of a patient which was previously caused either by disease or a prior accident.") (citing Zigman).
[6] See Zigman, 664 So.2d at 970 ("The use of the instruction is best illustrated in cases involving premature infants, where it has been held that the fact of prematurity may unite with the alleged negligence of the physician or hospital in subsequent treatment to form the evidentiary basis for a 5.1(b) instruction.") (citations omitted); Marinelli v. Grace, 608 So.2d 833, 834 (Fla. 4th DCA 1992) ("The 5.1(a) instruction, when given alone, is misleading where there are two or more causes of a plaintiff's injuries, since the instruction may lead a jury to conclude that a defendant is only liable if the defendant's negligence is the sole cause of the injuries.") (citing Banks v. Hospital Corp. of Am., 566 So.2d 544 (Fla. 4th DCA 1990), review denied, 577 So.2d 1326 (Fla.1991)), review denied, 620 So.2d 761 (Fla. 1993); see also Cruz.
[7] Hart requested that the trial court give the following instruction to the jury on aggravation of a pre-existing disease or condition:

Any aggravation of an existing disease or physical defect or activation of any such latent condition, resulting from such injury. If you find that there was such an aggravation, you should determine, if you can, what portion of Jade Lakay Hart's condition resulted from the aggravation and make allowance in your verdict only for the aggravation. However, if you cannot make that determination or if it cannot be said that the condition would have existed apart from the injury, you should consider and make allowance in your verdict for the entire condition.
[8] The court in Auster explained the need for giving the aggravating cause instruction in conjunction with the concurring cause instruction:

The use of the aggravation instruction was also mandated in connection with the concurring cause instruction. Once a jury determines that the defendant's negligence caused in full or in part the plaintiff's injury, instruction 6.2(b) would then permit the jury to assess damages against the negligent defendant for only that portion of the injury resulting from the aggravation or acceleration of the preexisting condition or the activation of a latent condition. To avoid any confusion, a trial court should read the instruction on concurrent cause in conjunction with the damages instruction on aggravation. See Marinelli, 608 So.2d at 834 (concluding that the aggravation instruction which allows a jury to assess the damages based on any aggravation of the preexisting condition is insufficient against any risk of confusion without also reading the concurrent cause instruction).
649 So.2d at 887.
[9] See also Jost v. Ahmad, 730 So.2d 708, 711 (Fla. 2nd DCA 1998) ("Based on the record facts, we agree that the trial court should give the `aggravation' instruction in conjunction with the `concurrent cause' instruction if requested by any party."), review denied, 743 So.2d 508 (Fla.1999); Esancy (holding that where the evidence revealed that the defendant's negligence combined with the plaintiff's pre-existing condition to cause her injury, the trial court, which gave the aggravation instruction, should have given the instruction on concurrent cause to prevent the jury from being misled into believing that the pre-existing injury was the sole cause of the plaintiff's damages).