873 So.2d 378 (2004)
Cynthia HADLEY, etc., Appellant,
v.
John E. TERWILLEGER, M.D., et al., Appellees.
No. 5D03-1279.
District Court of Appeal of Florida, Fifth District.
April 2, 2004.
Rehearing Denied May 24, 2004.
*379 Keith M. Carter of Morgan, Colling & Gilbert, P.A., Tampa, for Appellant.
Rafael E. Martinez and Michelle M. Perez-Sotolongo of McEwan, Martinez & Dukes, P.A., Orlando, for Appellees.
SHARP, W., J.
Cynthia Hadley appeals from an adverse final judgment and the denial of her motion for a new trial in a medical malpractice case. Hadley filed suit against John E. Terwilleger, M.D., the Estate of M. Vann Parker, M.D.[1] and Sanford Pediatrics Associates, Inc. (Sanford Pediatrics), the doctors' medical association[2] for negligence in failing to diagnose and treat her minor daughter for tuberculosis meningitis, and the resulting injuries suffered by the child caused by the disease, which were severe and permanent.[3] Hadley argues on appeal that the trial court erred by refusing to instruct the jury on concurring cause, Florida Standard Jury Instruction 5.1(b). We agree and reverse for a new trial.
This court, as well as others,[4] have concluded that where the facts of the case support the theory of the plaintiff's case, viewed most favorably towards the plaintiff,[5] that when a defendant's negligence, operating in combination with the negligent act of another, or a natural cause such as a disease or pre-existing condition, results in injury or damage to another, a concurrent cause instruction should be given. Florida Standard Jury Instruction 5.1(a), was the sole instruction given in this case.
Florida Standard Jury Instruction 5.1(a) provides:

*380 Negligence is a legal cause of loss, injury or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss, injury or damage, so that it can reasonably be said that but for the negligence, the loss, injury or damage would not have occurred. (emphasis added)
Florida Standard Jury Instruction 5.1(b) provides:
In order to be regarded as the legal cause of loss, injury or damage, negligence need not be the only cause. Negligence may be a legal cause of loss, injury, or damage even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such loss, injury or damage.
In this trial, Hadley established through her testimony that she took her daughter to Sanford Pediatrics on September 2, 1995, the day after her daughter became ill at school and had to be brought home. She saw Dr. Parker. The child was running a high fever and was vomiting, complaining of a headache and her neck hurting. These conditions continued and grew worse over the next few days. Hadley returned to Sanford Pediatrics on September 5th and 7th with her daughter and saw both Dr. Parker and Dr. Terwilleger. The doctors diagnosed a viral infection, prescribed pain medication and antibiotics, but did not perform a lumbar puncture, which could have led to an earlier diagnosis of meningitis.
After the third visit to Sanford Pediatrics, where (in Hadley's view) she was receiving no help, on September 9th, Hadley took her daughter to the emergency room at Volusia Medical Center when the child's symptoms continued to worsen. The treating doctor also failed to suspect meningitis and discharged her. The disease progressed and on September 12th, Hadley was called at work to come home because her daughter looked like she was dead. She took her to the emergency room where the child began having convulsions. She was immediately admitted on an emergency basis to the Intensive Care Unit of the Arnold Palmer Hospital for Children and Women, in Orlando. She was comatose and having seizures. On the 15th of September, TB meningitis was suspected and specific treatment for it began, but it was not officially diagnosed for more than ten days.
The two expert witnesses for Hadley (Dr. Klein and Dr. Webber) testified that TB meningitis is a rare disease and difficult to diagnose. They both said the defendant doctors should have suspected meningitis and done a lumbar puncture either on September 5th or September 7th. They based their opinions on Hadley's deposition testimony in which she recounted the child's high fever, vomiting, headaches, back and neck aches, and the child's increased weakness from September 2nd to the 7th. The medical records kept by Sanford Pediatrics do not substantiate such severe symptoms, and both doctors agreed that if the Sanford Pediatric medical records were accurate, no deviation from the standard of care (not suspecting meningitis and failing to do a lumbar puncture) occurred. However, Hadley's deposition testimony is corroborated by the medical histories she gave when her daughter was admitted to the Volusia Medical Center and Arnold Palmer. Dr. Klein said the fact that Hadley brought her sick child in for the same symptoms which she felt were growing worse, alone, should have caught the defendant doctor's attention, since mothers know their children *381 best. This should have lowered their threshold for suspecting meningitis.
Dr. Weber testified:
[I]t is significant, and, you know, virtually every pediatrician ... if you have an infant or a child coming with fever, even though we know the majority of them are some kind of viral, relatively benign illness, that we always want to rule outusually by history and physical in pediatrics, occasionally with diagnostic studies, you want to make sure they don't have a more severe illness. And the one that always jumps to mind is meningitis.
Dr. Klein testified that had a lumbar puncture been performed on September 5th or 7th, it would have revealed meningitis, and treatment could have begun earlier. Although he could not say the child would have avoided all of the resulting injuries from the disease had she been diagnosed a week or so earlier, the longer the child went without treatment, the more tissue was damaged by the disease. Dr. Klein said:
Meningitis is a frequent event as a concern for children in the sense that an organism that colonizes the upper respiratory tract then gets into the blood and, from the blood, reaches the covering of the brain, which is called the meninges. And if there's inflammation, it's called meningitis. And there are a lot of different organisms that cause meningitis, the most serious are usually bacteria. There are many episodes of meningitis that are caused by viruses, and some of them can be serious. And so having a low threshold for diagnosis of meningitis is very important because early treatment may prevent severe consequences.
Both doctors testified that had the child been diagnosed in the earlier stages of the disease, she would likely have suffered no permanent injury, and if diagnosed in the second stage, less damage. She was in the third or final (often fatal) stage of the disease when treated at Arnold Palmer, after which permanent damage or death can be expected. However, in their opinions, the child was in the first or second stages when seen by the defendants.
In this case, the credibility of Hadley as to having given the defendant doctors an accurate account of her daughter's symptoms when she said she did, was a decisive issue, as it formed the basis for Hadley's expert witness testimony. However, the general verdict in this case does not disclose the basis for the jury's no negligence verdict on the part of the defendant doctors. Was it their disbelief of Hadley, or their confusion about the necessity for finding the defendant's negligence was the sole cause (pursuant to the "but for" instruction given to the jury) of the injuries suffered by the child?
The purpose of the concurring cause instruction is to negate the idea that a defendant is excused from the consequences of his or her negligence by reason of some other cause concurring in time and contributing to the same damage.[6] The instruction on legal cause given in this case, (5.1(a)), may have confused or misled the jury.[7] Under these circumstances, we conclude that Hadley is entitled to a new trial, with the jury correctly instructed as *382 to concurring cause, 5.1(b), because in this case Hadley established the classic concurring cause situation, were her testimony to be accepted by the jury.
REVERSED and REMANDED.
SAWAYA, CJ., concurs.
MONACO, J., dissents with opinion.
MONACO, J., dissenting.
I respectfully dissent.
While the issue of when a concurrent cause instruction is appropriate in medical negligence cases is unclear, at best, I believe that the present case is controlled by the Florida Supreme Court's opinion in Goldschmidt v. Holman, 571 So.2d 422 (Fla.1990), and that the final judgment should, therefore, be affirmed.
I begin with the proposition that concurrent cause is a subset of proximate cause. An analysis of proximate cause addresses whether and to what extent a defendant's conduct foreseeably and substantially caused the specific injury of which the plaintiff complains. See Esancy v. Hodges, 727 So.2d 308 (Fla. 2d DCA 1999); see also McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992). Concurrent causes, as defined in Goldschmidt, are "two separate and distinct causes that operate contemporaneously to produce a single injury." Goldschmidt, 571 So.2d at 424. That is to say, both concurrent causes act proximately to produce the injury and damages.
We have most clearly seen instances of concurrent proximate causes where a plaintiff is injured as a result of two automobile collisions. See, e.g., Morton Roofing, Inc. v. Prather, 864 So.2d 64 (Fla. 5th DCA 2004). There are also numerous cases in which a pre-existing injury is further aggravated by another party's negligence. See, e.g., Marinelli v. Grace, 608 So.2d 833 (Fla. 4th DCA 1992), review denied, 620 So.2d 761 (Fla.1993). Where it gets muddy, however, is when the facts concern a failure to diagnose in the medical negligence context.
There appears to be no question but that the concurring cause instruction is required where the resulting injury in a malpractice case is caused by both the natural progression of the patient's disease and the physician's failure to impede its natural progress. See, e.g., Auster v. Gertrude and Philip Strax Breast Cancer Inst., Inc., 649 So.2d 883, 887 (Fla. 4th DCA 1995); Miller v. Court, 510 So.2d 926 (Fla. 4th DCA 1987), review denied, 523 So.2d 576 (Fla.1988). Goldschmidt, however, seems to carve out an exception. Under that case the failure to give a concurring cause instruction is not reversible error unless there is evidence presented that the pre-existing condition suffered by the plaintiff at the time he or she is treated by the defendant doctor itself causes injury, in combination with the negligence of the doctor in failing to identify, diagnose or properly treat the condition.
Goldschmidt involved a failure to diagnose and treat appendicitis suffered by Taletha Holman, the daughter of the plaintiffs. The purported malpractice occurred over several days, including one in which another physician, Dr. Soud, who was substituting for Dr. Goldschmidt, responded to a call of the plaintiffs, Mr. and Mrs. Holman. The high court concluded that no concurrent cause instruction was necessary, saying:
The thrust of the entire trial centered solely upon whether Goldschmidt was negligent in misdiagnosing Taletha's appendicitis. At all times Goldschmidt defended on the ground that he was not negligent. No one argued or presented evidence that any other operative cause was present. Neither Goldschmidt nor the Holmans ever asserted that the preexisting appendicitis caused any part of Taletha's injury. To the contrary, the Holmans' own expert testified *383 that had Goldschmidt not been negligent, Taletha would have been "operated on and [sent] home in a couple of days completely well."
Likewise, there was no evidence or argument to the jury that Soud's alleged negligence was a cause of the injury separate and apart from Goldschmidt's negligence. While the Holmans' expert testified that Soud was negligent, no one testified what effect, if any, Soud's alleged negligence had on Taletha's injury or how it operated in relation to Goldschmidt's alleged negligence.
Because the evidence was insufficient to support a concurring causes instruction on either the preexisting appendicitis or Soud's alleged negligence, the district court erred in reversing the trial court's denial of the instruction.
Goldschmidt, 571 So.2d at 425. (Emphasis added).
We have the identical situation in the present case. Here, the defendant doctors defended on the ground that they were not negligent. The experts called by Ms. Hadley, the plaintiff below, testified that the Stage I TB meningitis "could have been successfully treated without long term residual had the condition been timely diagnosed" by the defendant physicians. Moreover, all experts who testified said that 100% of children diagnosed in Stage I tuberculosis meningitis "have completely normal outcomes."
As is pointed out in the majority opinion, the standard instruction on causation, Florida Standard Jury Instruction 5.1(a), provides a "but for" test for the jury to considerbut for the negligence, the loss, injury or damage would not have occurred. Here, as in Goldschmidt, had there been a proper diagnosis, there would have been no injury. The parties are in complete agreement that Ms. Hadley's daughter was in the early stages of her disease when she saw the appellees, and all of the evidence at the trial indicated that the child would have had a complete recovery "but for" the negligence of the appellees in misdiagnosing the disease. The disease had not taken a toll when she was seen by the appellees. Thus, the disease could not have been a concurrent cause of the injury suffered by the plaintiff's daughter, and only the standard instruction on causation was required to be given. As there were not two or more separate causes that acted in combination to produce the injury, the concurrent cause instruction was properly rejected by the trial court.
A trial judge is given broad discretion in determining what jury instructions are appropriate in a particular case, and no reversible error will be found unless the jury instructions given were reasonably calculated to mislead the jury, or unless the error complained of resulted in a miscarriage of justice. See Hart v. Stern, 824 So.2d 927, 929 (Fla. 5th DCA 2002), review denied, 842 So.2d 847 (Fla.2003); Reyka v. Halifax Hosp. Dist., 657 So.2d 967 (Fla. 5th DCA 1995). As I believe that the concurring cause instruction was unnecessary in the present case in light of Goldschmidt, I would affirm.
NOTES
[1] Parker retired at the end of 1996 after working for forty years at Sanford Pediatrics, and died prior to the trial in this case. Hadley filed an amended complaint substituting the estate as a defendant.
[2] Sanford Pediatric Associates, P.A. is an active Florida corporation.
[3] The daughter was left with rods in her spine from a twelve level spinal fusion, severe growth abnormalities, emotional/behavioral problems that cannot be handled in a standard public school setting, and abnormal cognitive functioning.
[4] See Hart v. Stern, 824 So.2d 927 (Fla. 5th DCA 2002); Zigman v. Cline, 664 So.2d 968 (Fla. 4th DCA 1995); Auster v. Gertrude and Philip Strax Breast Cancer Detection Institute, Inc., 649 So.2d 883 (Fla. 4th DCA 1995); Miller v. Court, 510 So.2d 926 (Fla. 4th DCA 1987). These cases are distinguishable from Goldschmidt v. Holman, 571 So.2d 422 (Fla. 1990) because in that case no party argued there was a concurring cause, and in La Petite Academy v. Kamerzel, 751 So.2d 641 (Fla. 5th DCA 1999), the court concluded there was no legitimate concurring cause established by the evidence in the case.
[5] Hernandez v. State Farm Fire & Cas. Co., 700 So.2d 451, 453 (Fla. 4Th DCA 1997).
[6] Hart v. Stern, 824 So.2d 927, 930 (Fla. 5th DCA 2002);
[7] See, e.g., Hart v. Stern, 824 So.2d 927, 930 (Fla. 5th DCA 2002); Auster v. Gertrude and Philip Strax Breast Cancer Detection Institute, 649 So.2d 883, 887 (Fla. 4th DCA 1995); Banks v. Hospital Corporation of America, 566 So.2d 544 (Fla. 4th DCA 1990). See also Miller v. Court, 510 So.2d 926 (Fla. 4th DCA 1987); Tilley v. Broward Hospital District, 458 So.2d 817 (Fla. 4th DCA 1984); Marrero v. Salkind, 433 So.2d 1224 (Fla. 3d DCA 1983).